IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM G. FRIEMUTH,

                Plaintiff,

      v.

FISKARS BRANDS, INC.,

                Defendant.

OPINION and ORDER

09-cv-494-vis[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff William G. Friemuth filed this civil action against defendant Fiskars Brands,

asserting claims arising under the Age Discrimination in Employment Act of 1967 (ADEA),

29 U.S.C. § 621 - 634, and the Employee Retirement Income Security Act of 1974, 29

U.S.C. §§ 1001, 1132(a)(3)(ERISA). Defendant Fiskars Brands, Inc. has filed counterclaims

for breach of contract, breach of duty of loyalty, conspiracy to injure another in trade or

business and fraud.

Now before the court are plaintiff's motions to dismiss three of defendant's

---

[1]   The parties have declined the jurisdiction of the magistrate judge.  Because no Article III judge has been assigned to this case, I have assumed jurisdiction over the case temporarily to resolve the parties' current disputes.

counterclaims and to amend his complaint to add a claim for retaliation.  I will grant plaintiff's motion to dismiss the counterclaims.  Defendant's breach of contract claim fails because there is no factual basis for inferring that plaintiff agreed to the terms of defendant's Conflict of Interest policy and the nondisclosure provisions of defendant's Employment Agreement and Patent Secrecy Agreement are unenforceable because they do not include a time limit as required under Wis. Stat. § 103.465.  As for defendant's claims for conspiracy and fraud, defendant has failed to meet the pleading requirements for either claim.  Because pleading deficiencies may be repaired, defendant may have until February 25, 2010 in which to file an amended answer and counterclaims addressing the problems discussed below.

I will deny plaintiff's motion to amend.  I am not persuaded that "justice requires" allowing this amendment, particularly in light of (a) the remedies already available in the present suit; (b) the inefficiency of bringing a retaliation claim in the context of the allegedly retaliatory suit; and (c) the fact that the allegations supporting the claim for retaliation fail to satisfy Fed. R. Civ. P. 8.

OPINION

A.  <u>Motion to Dismiss Counterclaims</u>

1.  <u>Count I: breach of contract</u>

Defendant contends that plaintiff breached both a conflict of interest provision in its

2

Conflict of Interest policy and two nondisclosure agreements in its Employment Agreement and its Patent Secrecy Agreement.

a.  Conflict of interest provision

Plaintiff contends that defendant's claim for breach of the terms of defendant's Conflict of Interest policy must be dismissed because there is no basis for inferring that plaintiff ever agreed to the terms of the policy.  Defendant has not responded to that argument, which operates as waiver.  <u>Wojtas v. Capital Guardian Trust Co.</u>, 477 F.3d 924, 926 (7th Cir. 2007).  Therefore, I will grant plaintiff's motion to dismiss with respect to defendant's claim that plaintiff breached defendant's Conflict of Interest policy.

b.  Nondisclosure agreement

Defendant contends that plaintiff breached provisions in defendant's Employment Agreement and Patent Secrecy Agreement prohibiting plaintiff from disclosing certain confidential and business information of defendant.   Plaintiff contends that these nondisclosure provisions are unenforceable under Wis. Stat. § 103.465, which makes "illegal, void and unenforceable" any provision in an employment contract that constitutes an unreasonable restraint on trade.

The first question is whether the nondisclosure agreements would be considered a

3

restraint on trade at all under § 103.465.  The agreements at issue prohibit disclosure of "information . . . relating to the design, manufacturing processing of [defendant's] products . . ., the distribution and marketing of [defendant's] products, . . . the pricing, credit and general sales policies of [defendant], . . . any trade secrets . . . and any other information pertinent to the products or operations of Fiskars" and disclosure and use of "any secret or confidential information, drawings, specifications, processes, computer programs, or other trade secrets or business confidences" of defendant's.

By its terms, § 103.465 is silent as to nondisclosure agreements; it places limitations only on "covenant[s] . . . not to compete."  However, as the Wisconsin Supreme Court has explained, what matters is whether a provision "seeks to restrain competition."  <u>Tatge v. Chambers & Owen, Inc.</u>, 219 Wis. 2d 99, ¶¶ 28-29, 579 N.W.2d 217 (1998) (citing <u>Gary Van Zeeland Talent, Inc. v. Sandas</u>, 84 Wis.2d 202, 218, 267 N.W.2d 242, 250 (1978)). In <u>Tatge</u> and <u>Gary Van Zeeland</u>, the court applied § 103.465 to nondisclosure provisions. <u>Tatge</u>, 219 Wis. 2d 99, ¶¶ 28-29, 579 N.W.2d 217 (provision prohibiting disclosure of customer data, programs and business practices); <u>Gary Van Zeeland</u>, 84 Wis. 2d at 218, 267 N.W.2d at 250 (disclosure of customer list).

Defendant suggests that the nondisclosure agreements at issue in this case are not covered by § 103.465, citing <u>Genzyme Corp. v. Bishop</u>, 460 F. Supp. 2d 939 (W.D. Wis. 2006), in which Judge Shabaz concluded that the court could not determine as a matter of

4

law whether a nondisclosure provision was subject to § 103.465 because the determination required a "showing as to how such a provision affects the individual defendants' mobility." Following <u>Tatge</u>, however, it is difficult to see how any nondisclosure agreement could be viewed as falling outside § 103.465.   In <u>Tatge</u>, the court relied on the terms of the nondisclosure provision alone to reach its conclusion, which simply prohibited disclosure of the company's "information to any person, firm, corporation, association, or other entity for any reason or purpose whatever." <u>Tatge</u>, 219 Wis. 2d 99, ¶¶ 28, 579 N.W.2d 217 (noting that provision contained  "virtually the same language as" nondisclosure agreement in <u>Van Zeeland</u>).  The court concluded that the nondisclosure provision represented the employer's attempt to "shield its customer data, programs, and business practices from competitors' eyes" which the employer believed was "of substantial value." <u>Tatge</u>, 219 Wis. 2d 99, ¶¶ 28-29, 579 N.W.2d 217.  According to the court in <u>Tatge</u>, "[t]his is the essence of a trade restraint."  <u>Id.</u>, ¶ 29.

As in <u>Tatge</u>, the nondisclosure agreement in this case represents defendant's attempt to shield its valuable information from competitors.  The agreements block disclosure of information related to the details of defendant's products, processes and business strategy. One of the nondisclosure agreements in this case goes even farther, blocking both disclosure and "use" of certain secret or confidential information.  I am persuaded that defendant's Employment Agreement and Patent Secrecy Agreement are restraints of trade subject to §

5

103.465.

The next question is whether the nondisclosure provisions are "unreasonable" and therefore unenforceable under § 103.465, which provides that such a provision "within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal."  Plaintiff contends that the nondisclosure provisions at issue in this case are unreasonable because neither provision has any time limitation.  The Employment Agreement prohibits disclosure "during the term of this Agreement [and] following its termination" and the Patent Secrecy Agreement prevents "disclos[ure] or use, either during or after said employment, [of] any secret or confidential information . . ." of defendant's.

The Wisconsin Supreme Court has indicated that the lack of any time limitation renders a restrictive covenant unreasonable per se.  Gary Van Zeeland, 84 Wis. 2d at 218, 267 N.W.2d at 250 (noting that nondisclosure provision "constitutes an unreasonable restraint of trade" because it sets no limits on geographic area and time); Holsen v. Marshall & Ilsley Bank, 52 Wis. 2d 281, 287, 190 N.W. 2d 189 (1971) ("an entire absence of limitations as to time and place is fatal to a claim"); see also Nalco Chemical Co. v. Hydro Technologies, Inc., 984 F.2d 801, 803-04 (7th Cir. 1993) (nondisclosure provision with no time limitation found void and unenforceable) (citing Gary Van Zeeland, 84 Wis. 2d at 218, 267 N.W.2d at 250)); Sysco Food Services of Eastern Wisconsin, LLC v. Ziccarelli, 445 F.

6

Supp. 2d 1039, 1052-53 (E.D. Wis. 2006) (same).

Defendant contends that it is necessary to develop the factual record before deciding whether a restrictive covenant is enforceable under § 103.465 and points out that only one of the cases plaintiff cites, Sysco, found a nondisclosure provision unenforceable before the record had been developed.  But why does that matter?  Even in the cases decided in the context of a motion for a preliminary injunction, Nalco, 984 F.2d at 803-04, or at summary judgment, Gary Van Zeeland, 84 Wis. 2d at 218, 267 N.W.2d at 250, the courts declared the provision unreasonable on the lack of time limitation alone, never suggesting that other facts in the record influenced that decision.  Moreover, the language of the statute supports the rationale that *some* time limit is always required under § 103.465.  Rather than simply state that *any* restrictive covenant is lawful and enforceable so long as its restrictions are "reasonably necessary," the statute states that restrictive covenants "within a specified territory and *during a specified time*" are lawful and enforceable if their restrictions are reasonably necessary.  The added language suggests that *some* time limitation is necessary, supporting the view that a restrictive covenant lacking any time limitation is per se unreasonable.  Holsen, 52 Wis. 2d at 287, 190 N.W.2d at 192 ("The statutory reference to covenants not to compete 'within a specified territory and during a specified time' . . . does more than describe a category of covenants.").

Defendant takes the position that the record must be developed in *any* case before

7

deciding whether a covenant is reasonable, drawing its view from a line of cases starting with Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton, 101 Wis. 2d 460, 468, 304 N.W.2d 752, 756 (1981).  In Rollins, the Wisconsin Supreme Court concluded that additional facts were required before deciding whether a particular restrictive covenant was unenforceable under § 103.465.  In so deciding, the court explained that "what is reasonable varies from case to case" and the question is "one which can be made only upon a consideration of factual matters."  Id.

As defendant points out, since Rollins, several courts have required development of the evidentiary record before deciding whether a restrictive covenant is unenforceable under § 103.465.  Farm Credit Services of North Central Wisconsin, ACA v. Wysocki, 2001 WI 51, ¶16, 243 Wis. 2d 305, 627 N.W.2d 444; Aon Risk Services, Inc. v. Liebenstein, 2006 WI App 4, ¶ 15, 289 Wis. 2d 127, 710 N.W.2d 175; General Medical Corp. v. Kobs, 179 Wis. 2d 422, 434-36, 507 N.W.2d 381, 386-87 (Ct. App. 1993); IDX Systems Corp. v. Epic Systems Corp., 285 F.3d 581, 586 (7th Cir. 2002); Henderson v. U.S. Bank, N.A., 615 F. Supp. 2d 804, 811-12 (E.D. Wis. 2009).  However, the cases do not undermine the established rule that a covenant with no time limitation is unreasonable per se.

Most of the cases defendant cites involved restrictive covenants with *some* time limitation.  Rollins, 101 Wis. 2d at 468-70, 304 N.W.2d at 756-57 (two-year time limitation); Wysocki, 2001 WI 51, ¶ , 243 Wis. 2d 305, 627 N.W.2d 444 (one-year time

8

limitation); Aon Risk Services, 2006 WI App 4, ¶ 17, 289 Wis. 2d 127, 710 N.W.2d 175 (two-year time limitation); General Medical Corp, 179 Wis. 2d 422, 507 N.W.2d 381, 386-87 (Ct. App. 1993) (eighteen-month time limitation). As for IDX Systems, 285 F.3d at 585-86, that case is distinguishable for other reasons. In that case, the agreement at issue was between a supplier and user of intellectual property instead of between an employer and employee. Id. at 585. As the court of appeals explained, no Wisconsin case has ever attempted to apply the no-compete restrictions of § 103.465 to agreements between supplier and user, and there is reason not to do so: the concern behind employer-employee no-compete clauses, "preventing horizontal competition," is not present in the supplier-user setting. Id.

This leaves defendant with one case on point: Henderson, 615 F. Supp. 2d at 811-12. In Henderson, the court acknowledged that Nalco, Sysco and Gary Van Zeeland "seemingly concluded" that lack of time limitation renders a restrictive covenant unreasonable per se, but pointed out that time limitations are not required in certain circumstances, such as where the provision "is designed to protect trade secrets or intellectual property." Id. at 811 (citations omitted); see also Nalco, 984 F.2d at 803 (under Wis. Stat. § 134.90, no time limit required on trade secret restrictions). Because some of the materials allegedly disclosed in Henderson may have been trade secrets, the court concluded that it could not decide whether the nondisclosure provision was unreasonable before the record

9

had been developed.  Henderson, 615 F. Supp. 2d at 811-12.  (The court added that some of the disclosed materials may have been covered by the privacy provisions of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801-6809, but those provisions do not apply in this case.)

However, as plaintiff points out, this reasoning misses an important point.  Even if a nondisclosure provision restricts disclosure of trade secret information, if it also restricts disclosure of information that is not a trade secret, § 103.465 requires a time limitation on the provision.  This is because, when one part of the covenant is unreasonable, the entire covenant becomes unenforceable.  Wis. Stat. § 103.465 ("Any covenant described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.").  Because a restriction on disclosure of non-trade secret information would be per se unreasonable without a time limitation under § 103.465, Nalco, 984 F.2d at 803, the remaining restrictions are unenforceable as well.  This does not mean that there is no remedy for improperly disclosed trade secrets under these circumstances:  an injured business can bring a claim for violation of Wisconsin's Uniform Trade Secrets Act, Wis. Stat. § 134.90 independently of any breach of contract claim.

In this case, the nondisclosure provisions cover trade secrets, but also cover other types of information. The Employment Agreement prohibits disclosure of "*any* information . . . relating to the design, manufacturing processing . . . distribution and marketing and

10

pricing, credit and general sales policies of [defendant]" and the "any trade secrets . . . and *any other information* pertinent to the products or operations of Fiskars."  Likewise, the Patent Secrecy Agreement prohibits disclosure of "*any* secret or confidential information, drawings, specifications, processes, computer programs, or other trade secrets *or* business confidences."  Defendant does not argue that the broadly worded provisions could be read as prohibiting only trade secrets.

Because the provisions lack any time limitation, I agree with plaintiff that the covenants are unenforceable.  There is no need for additional development of the record to conclude as much.  Therefore, I will grant plaintiff's motion to dismiss defendant's claim that plaintiff breached the Employee Agreement and Patent Secrecy Agreement.  This leaves nothing to count I of defendant's counterclaim, so I will dismiss that count with prejudice for failure to state a claim upon which relief may be granted.

2.  <u>Count III: conspiracy to injure another in its trade or business</u>

In Count III, defendant asserts a claim for civil conspiracy against plaintiff under Wis. Stat. § 134.01 on the ground that plaintiff has conspired with defendant's buyers for the purpose of injuring defendant in its trade or business.  Plaintiff contends that defendant has failed to allege sufficient facts to satisfy Fed. R. Civ. P. 8.  In particular, plaintiff contends that defendant has failed to identify any particular acts that plaintiff and a co-conspirator

11

have taken in furtherance of the alleged conspiracy and has failed to allege facts suggesting that both plaintiff and the co-conspirator acted with malice.

Under Rule 8, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Although the "notice pleading" of Rule 8 does not require "detailed factual allegations" supporting each element of a claim, it is not enough for a pleader to make "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). The pleader must provide specific allegations that, if true, make plaintiff's claim for relief more than speculative, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), which means it must be more than speculative to believe that additional discovery will establish each element of a claim. Riley v. Vilsack, ___ F. Supp. 2d___, 2009 WL 3416255, *9 (W.D. Wis. Oct. 21, 2009).

In the context of defendant's conspiracy claim, this means the allegations must make it more than speculative that plaintiff and at least one other person "combine, associate, agree, mutually undertake or concert together" either "for the purpose of willfully or maliciously injuring" the reputation, trade, business or profession of another or "for the purpose of maliciously compelling . . . or preventing" the actions of another. Wis. Stat. § 134.01. In either case, "[t]here can be no conspiracy if malice is not found in respect to both conspirators." Maleki v. Fine-Lando Clinic Chartered, S.C., 162 Wis. 2d 73, 86, 469

12

N.W.2d 629, 634 (1991).

Defendant contends that the bases for its § 134.01 claim are set out sufficiently in paragraphs 67, 68 and 70 of its answer and counterclaim, dkt. #8. In those paragraphs, defendant alleges that plaintiff "has combined, associated, agreed, mutually undertaken or acted in concert with one or more buyers of a major Fiskars customer, for the purpose of willfully or maliciously injuring Fiskars in its trade or business" and "has implemented this scheme to injure Fiskars' business, by, perhaps among other things, secretly usurping business opportunities available to Fiskars and competing against Fiskars in part by the use of Fiskars' confidential and proprietary business information." In addition, defendant alleges that plaintiff's "acts in furtherance of the scheme . . . have been willful and malicious."

These allegations are lacking. First, nowhere does defendant provide any facts to support the conclusion that "one or more buyers of a major Fiskars customer" conspired with plaintiff. The conclusory statement that they have "combined, associated, agreed, mutually undertaken or acted in concert" is insufficient. Cf. Twombly, 550 U.S. at 553-56 (Rule 8 requires alleging sufficient factual matter to suggest that conspiracy has occurred). In addition, nothing but conclusory statements support the contention that plaintiff acted with malice, and noting suggests that any co-conspirator acted with malice. "For conduct to be malicious under conspiracy law it must be conduct intended to cause harm for harm's sake." Maleki, 162 Wis. 2d at 86, 469 N.W.2d at 634. If anything, the allegations suggest that

13

plaintiff and any co-conspirator performed in the allegedly injurious acts to make money (for their own sake), not to make defendant lose money ("for harm's sake").

Defendant cites <u>Brew City Redevelopment Group, L.L.C. v. Ferchill Group, L.L.C.</u>, 2006 WI 128, ¶ 20, 297 Wis. 2d 606, 724 N.W.2d 897, as describing the "requirements to state a cause of action for civil conspiracy," Def.'s Br., dkt. #16, at 6, noting that the court required only that the plaintiff allege that the defendants had conspired for the purpose of willfully and maliciously injuring the plaintiff in his reputation, trade and profession and that the plaintiff had been injured by the conspiracy.  To the extent defendant suggests that <u>Brew City</u> should be taken to mean that barebones allegations are enough, that state court decision cannot override the pleading requirements set forth in Fed. R. Civ. P. 8 and in <u>Iqbal</u> and <u>Twombly</u>.

Nothing but speculation and conclusory statements support defendant's theory that there was a conspiracy and that the conspirators acted maliciously against defendant. Therefore, I will grant plaintiff's motion to dismiss Count III for defendant's failure to allege sufficient facts to satisfy Rule 8.  However, because this problem can be repaired, dismissal of Count III will be without prejudice to defendant's amending the counterclaim by February 25, 2010.

3. <u>Count IV: Fraud</u>

In Count IV, defendant asserts a claim of fraud against plaintiff on the ground that plaintiff "misled [defendant] to believe during their employment relationship that [plaintiff] was exclusively and loyally dedicated to service to [defendant]" and intended to use "certain confidential and proprietary business information . . . in the interest of [defendant]" while "secretly acting in concert with one or more buyers for a major Fiskars customer to steal business opportunities and business information from Fiskars." Dkt. #8, at ¶¶ 72-73. Plaintiff contends that defendant has failed to allege the "who, what, when, where and how" of its fraud claim as required by Fed. R. Civ. P. 9(b). Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing Services, Inc., 536 F.3d 663, 668 (7th Cir. 2008) (citations omitted).

Under Rule 9, a pleading must include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Id. Defendant identifies who made the misrepresentation (plaintiff), and arguably the content (that plaintiff was loyally dedicated and intended to use confidential information solely for defendant's sake), but the allegations are less than clear as to the time, place and method of the misrepresentation. The time identified is simply "during [plaintiff's] employment" and the place and method are not identified at all. Defendant contends that the place is plaintiff's workplace because that is where he obtained the confidential information, but that is not the

15

place that is important to Rule 9.  The "where" involves where the *misrepresentation* was made, id., not where the events occurred that show that a given statement was indeed false.  The allegations defendant points to, dkt. #8, ¶¶ 21-47 and 72-76, do not identify the time, place or method.  Paragraphs 21-47 describe plaintiff's actions while he was preparing to leave defendant's employment (but describe no false statements) and paragraphs 72-76 are a conclusory recitation of the elements of fraud.  Nowhere does defendant pin down particular statements plaintiff made that are allegedly false or describe the circumstances in which any such statements were made.  This will not do.

Defendant contends that, under the circumstances, the Rule 9 pleading requirements should be "relaxed" because defendant "lacks access to all facts necessary to detail his claim." Def.'s Br., dkt. #9, at 9 (citing Corley v. Rosewood Care Center, Inc., 142 F.3d 1041, 1051 (7th Cir. 1998); Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992); United States ex rel. Themmes v. Hamilton Enterprises, Inc., No. 04-C-700, 2005 WL 1268784, at *6 (E.D. Wis. May 26, 2005)).  However, as plaintiff points out, these cases each involved fraud allegedly committed against a third party, circumstances in which the plaintiff would not necessarily have all the facts necessary to detail the claim.  Unlike in these cases, defendant alleges that the fraud occurred to *it*.  Defendant does not explain why it does not have all the facts necessary to describe the circumstances of the alleged misrepresentations that plaintiff allegedly made to defendant.

16

Because defendant has failed to meet the requirements of Rule 9 as to Count IV, I will grant plaintiff's motion to dismiss that count, but without prejudice to defendant's amending the counterclaim by February 25, 2010.  As with a failure to satisfy Rule 8, a failure to satisfy Rule 9 does not warrant dismissal with prejudice, at least not the first time.  But see Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 666-67 (7th Cir. 2007) (repeated failure to remedy same pleading deficiency warrants dismissal with prejudice).

B. Motion to Amend Complaint

In response to defendant's filing its counterclaims, plaintiff has filed a motion for leave to amend his complaint under Fed. R. Civ. P. 15(a) and 13(e) to add a claim for retaliation.  Plaintiff's theory is that, after filing his ADEA claim, defendant filed its counterclaims in retaliation.  Under Rule 15, a court should give leave to amend "freely. . . when justice so requires."  Under the present circumstances, I am not persuaded that "justice . . . requires" granting plaintiff leave to amend.  First, as defendant points out, conduct occurring within the scope of litigation is rarely a ground for a retaliation claim.  Steffes v. Stepan Co., 144 F.3d 1070, 1075-76 (7th Cir. 1998) (citing McKenzie v. Illinois Department of Transportation, 92 F.3d 473, 486 (7th Cir. 1996)).  As the court explained in McKenzie, 92 F.3d at 486, attempts to obstruct litigation are generally inseparable from

17

the litigation itself and better addressed by court rules than through a separate retaliation claim.  This case is no exception.

Through his retaliation claim, plaintiff seeks damages for having to defend against the counterclaims, but to the extent they have merit, or even any "reasonable basis," there can be no such claim.  Cf. Bill Johnson's Restaurants, Inc. v. National Labor Relations Board, 461 U.S. 731, 743-44 (1983) (meritorious lawsuit filed with retaliatory motive is not enjoinable as unfair labor practice but baseless lawsuit is enjoinable).  To the extent the counterclaims are baseless and have been brought for no other reason than to harass plaintiff and drive up his costs, there are other ways to receive fees for such an injury.  For example, under 28 U.S.C. § 1927, an attorney's "unreasonabl[e] and vexatiou[s]" litigation serves as grounds for seeking attorney fees.  Thus, it is hard to see why plaintiff should be allowed to amend his complaint now.

Next, assuming the retaliation claim would serve some purpose not duplicated by requests for relief under § 1927 and other court rules, it is not clear whether such a claim is even ripe until it is determined that the allegedly retaliatory claims are baseless.  At the very least, pursing the retaliation claim at the same time is likely to create inefficiencies.  For example, in this case, two counterclaims have been dismissed for failure to plead sufficient facts and one has been dismissed for failure to state a claim.  In a retaliation suit, the court would have to determine whether each of these claims are baseless although they have been

18

dismissed from the case.  (I note that, for the claim that has been dismissed with prejudice, plaintiff would be hard-pressed to say that it was *legally* baseless in light of defendant's citing a case on point suggesting that dismissal at this stage was not warranted.)  Or, if defendant amends the counterclaims, the question may have to be asked later, perhaps after the facts are fully developed.  In the meantime, plaintiff would have to develop his case for retaliation, including gathering evidence of defendant's allegedly improper motive.  If this court (or the court of appeals) were to conclude later that defendant's claims *were* meritorious, the retaliation claim would have to be dismissed.   Rather than entangling himself in contingencies, plaintiff could simply wait until the merits of defendant's claims have been resolved and file a separate lawsuit at that point.

Finally, even if it made good sense to decide a litigation-based retaliation claim in the context of the same suit, plaintiff has not alleged enough facts to satisfy Rule 8.  Aside from the conclusory statements that defendant's counterclaims are meritless and were filed in retaliation for plaintiff's filing his ADEA claim, plaintiff alleges only that defendant filed counterclaims to his ADEA claim.  Nothing in the allegations suggests improper motive on defendant's part.  In some circumstances, the mere filing of counterclaims could be a sufficient basis for inferring improper motive, such as when counterclaims are frivolous on their face, or perhaps when the counterclaims are allegedly based on blatant lies.  Neither is the case in this instance, so plaintiff must do more than point out that counterclaims have

19

been filed.  He has not.

For all these reasons, I will deny plaintiff's motion to amend his complaint to add a retaliation claim.  Nothing about this conclusion prevents plaintiff from pursuing other remedies for the allegedly meritless counterclaims in the context of this lawsuit or pursuing a separate lawsuit for retaliation.

ORDER

IT IS ORDERED that

1.   Plaintiff William G. Friemuth's motion to dismiss counts I, III and IV of defendant Fiskars Brands, Inc.'s counterclaims, dkt. #11, is GRANTED.   Count I is DISMISSED with prejudice for failure to state a claim upon which relief may be granted and counts III and IV are DISMISSED without prejudice.  Defendant may have until February 25, 2010 in which to amend its responsive pleading to repair the pleading defects discussed in this opinion.

2.  Plaintiff's motion to amend the complaint, dkt. #18, is DENIED.

Entered this 3rd day of February, 2010.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge